IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | |
|---|---|
| USA | CRIMINAL ACTION 06-05 |
| VS. | SEPTEMBER 1, 2006 |
| BOBBY SOUNDARA, et al | PROVIDENCE, RI |

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH

DISTRICT JUDGE

(BOBBY SOUNDARA SENTENCING EXCERPT)

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | RICHARD W. ROSE, ESQ.<br>U.S. Attorney's Office<br>50 Kennedy Plaza<br>Providence, RI 02903 |
| FOR THE DEFENDANT VANHATDY SOUVAUNAXAB: | WILLIAM C. DIMITRI, ESQ.<br>William C. Dimitri & Associates<br>462 Broadway<br>Providence, RI 02903 |
| FOR THE DEFENDANT BOBBY SOUNDARA: | ROBERT E. CRAVEN, ESQ.<br>Robert E. Craven & Associates<br>50 Park Row West<br>Suite 100<br>Providence, RI 02903 |
| Court Reporter: | Anne M. Clayton, RPR<br>One Exchange Terrace<br>Providence, RI 02903 |

Proceeding reported and produced by computer-aided stenography

THE COURT: Okay. Thank you. All right. I have received that, and I have the original, and I appreciate the comments of the victim in this case and respect the fact that you do not wish to be heard orally, but your letter has been made a part of the record.

Let me now rule on the Government's motion for an upward departure. As I've indicated in my comments with respect to my questions to counsel, I believe the appropriate approach here is to finish the determination of the guideline range that is applicable to these defendants, including ruling on the motion for upward departure, and then we'll move on to a determination of the appropriate sentence, and particularly whether the guideline range, which is determined after consideration of the departure, is sufficient under the statutory factors in Section 3553.

The Government moves for a departure under Section 5(k) 2.2, which provides that when a significant physical injury has resulted from the crime, the Court may increase the sentence above the authorized guideline range. This section of the guideline attempts to use a sliding scale, so to speak, with respect to the amount of departure that may be appropriate given the nature of the physical injury

that resulted from the crime. And it states that, quote, "When the victim suffers a major permanent disability, and when such injury was intentionally inflicted, a substantial departure may be appropriate."

This case clearly involves a major permanent disability suffered by the victim in this case, and appears to the Court to be one that was intentionally inflicted in the sense that the pipe bomb was made and thrown into the house of the victim.

The argument would be that it was not thrown into the house, but rather at the house, that it was not done with the intent to harm the victim, that it was done for -- maybe for the purpose of frightening the victim's son, who was a member of a rival gang.

The Government points out in its memorandum that had the bomb been thrown into the house with the specific intent of harming the victim in this case, it might warrant consideration of the guideline range for attempted murder.

I think there's enough to conclude, enough in the record to conclude that it was -- the harm was intentionally inflicted sufficient to meet the requirements of 5(k) 2.2, and, clearly, the harm that resulted was major and permanent. So the factors of 5(k) 2.2 are met, and the departure motion is going to

be granted.

Now, with respect to the argument that this is a form of double counting, if you will, that the harm is contemplated by the statutory mandatory minimum, it is true that the statutory minimum of seven years in this case is tied to the fact that personal injury resulted from the crime. Had personal injury not resulted from the crime and only property damage, it would be a mandatory minimum of five years. Had death resulted to, for example, a public safety officer, it would have been a much longer mandatory minimum.

So the mandatory minimum does contemplate the fact that personal injury resulted, but the guidelines are tied to the mandatory minimums. And the guidelines attempt to, I think, give the Court some latitude with respect to setting a guideline range based on the severity of the injury.

So my view is that the mandatory minimum does not preclude the application of an upward departure for physical injury, particularly where the physical injury is as severe and permanent as it was in this case. So I reject that argument of the defendants.

So then the question becomes what amount of a departure is warranted where an upward departure is granted? While I'm not required to give a specific

level of increase with respect to the amount of upward departure, I think it is useful to do so in this case particularly where there are co-defendants. The Government has referred to the guideline section 2(a)2.2(B)3, which is the guideline section for assault. And that guideline section would indicate that a seven-level increase would be appropriate where there is a permanent or life-threatening injury.

My view is that while a seven-level increase could be justified, I believe a six-level increase is more appropriate in this case. And I think the six level increase applies to both defendants.

I've already determined that both defendants are equally culpable in the sense that one prepared the bomb and the other threw the bomb. So I think the amount of upward departure should be equivalent for both defendants. And I've determined that given the nature and the severity of the physical injury here, and accounting for the fact that the mandatory minimum is also in play, that a six-level increase is also appropriate.

What that means is that with respect to Defendant Sonvaunaxab, his level increases to a 27, a criminal history category of 1, and that yields a guideline range of 70 to 87 months.

With respect to the Defendant Soundara, six-level increase puts him at a level 29, criminal history category of 3, and that is a guideline range of 108 months to 135 months.

So those are my findings with respect to the applicable guideline range in this case, and I'll now hear from counsel with respect to the appropriate sentence in this case. I'll hear from the Government first.

THE COURT: All right. Very well. Thank you. Well, the comments I have made with respect to -- would you please stand.

The comments I've made with respect to the Defendant Sonvaunaxab apply equally to this defendant, but there's more to this defendant that needs to be at least briefly addressed.

I don't doubt that you regret what you have done. I think you do. I don't doubt that you didn't expect to cause the kind of level of harm that you caused by this action, but that's often the case with people who engage in violent and stupid conduct. That's the problem with this type of conduct is that the consequences are often very different than what you might think as you go into it. But when you throw a pipe bomb at a house, you have absolutely every right to expect that someone is going to be hurt, especially when you do it at two o'clock in the morning when people are sleeping. And there's just no getting around the fact that when you engage in that kind of activity, you have to live with the consequences.

Now, it's particularly disturbing in your case that your level of gang activity and your involvement with violent actions and your identification with violent actions and your identification with violence

growing out of this gang activity seems more pronounced and more dramatic than your co-defendant. It's also significant that you were the person that threw the bomb. I found that you're equally culpable for purposes of guideline calculations, but there's no question that the person that throws the bomb is, to some degree, more responsible, more culpable than someone who made it two months earlier. So you have to accept some additional responsibility for that.

You've also got more a significant criminal history. Your co-defendant had no criminal history. You do. You don't have some of the qualities that are reflected in history sentence report with respect to his work. And although you're very similar individuals, there are some differences. There are enough differences, in my view, given the level of gang activity, the fact that you threw the bomb, and what's reflected in the presentence report criminal history, to justify a greater sentence for you than for your co-defendant.

And again, what seems most important in this, and in looking at the factors under Section 3553, is that the sentence reflect the seriousness of the offense and send the message that these kinds of crimes are going to be dealt with very, very severely. And as

I said, with respect to Mr. Sonvaunaxab, sometimes the message that is sent from the sentence is just as important or more important than the impact of the sentence on the individual defendant. We have to balance these things, but it's very important that people get the message that this kind of violence in the community will be met with very, very serious consequences.

You and your co-defendant will be still young when you're released from prison, and I do hope, and I want to make the point that I take no pleasure in meting out these sentences. I think this is a tragic situation, not just for the victim, but for you two as co-defendants. You're very young, and no one your age should have to be facing the possibility of this many years in prison. But you did what you did; you have to accept responsibility for it, and other people have to get the message that that's the consequence of this kind of behavior. It's tragic, but that's the way it is.

So in the matter of the United States versus Bobby Soundara, I am remanding you to the custody of the Federal Bureau of Prisons for a term of 120 months. I am imposing a term of supervised release on Count I of three years, Count II of five years.

I'm further imposing an obligation of restitution in an amount to be set forth in an order provided by counsel once the exact amount has been determined. You will be required to pay a $200 special assessment.

As special conditions of your term of supervised release of five years, first, you will be prohibited from association with any member of the gang, Laos Pride, or any other known gang -- any other association with other known gang members. You'll be required to participate in a program approved by the United States Department of Probation for substance abuse, which may include testing to determine whether you've reverted to the use of alcohol or drugs. You'll be required to participate in that testing up to 72 drug tests per year as approved by the Probation Office.

You'll also be required to perform 100 hours of community service during each year of your supervised release as directed by the Office of Probation.

Has this defendant waived his rights to appeal?

MR. ROSE: He did, your Honor.

THE COURT: All right. Well, you have waived your right to a direct appeal if the sentence is within the guideline range determined by the Court, and your sentence is within the guideline range determined by

the Court, but to the extent or if there is the possibility that the departure was not contemplated by that agreement, I take no position on that, that's something you'll have to deal with later, but it appears -- I'll just say no more about that. All right. Is there anything further?

MR. ROSE: Your Honor, not on behalf of United States, your Honor.

MR. DIMITRI: Not on behalf of Mr. Sonvaunaxab, your Honor.

MR. CRAVEN: Not on behalf of Mr. Soundara, your Honor.

THE COURT: All right. Then we'll be adjourned.

(Court concluded at 12:35 p.m.)

# C E R T I F I C A T I O N

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Anne M. Clayton

Anne M. Clayton, RPR

Jan. 26, 2007

Date